# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KAREN SUE HANCOCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:08CV291 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Karen Sue Hancock seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claim for Supplemental Security Income ("SSI"). The Commissioner's denial decision became final on April 17, 2008, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on December 27, 1961, and was 43 years of age on her alleged onset date of disability. She has a limited education. Plaintiff has past relevant work experience as a battery assembler and drop clipper. Plaintiff alleges disability as of

February 15, 2002 due to "right knee, arthirites [sic] in back and leg, 2 heart aches [sic] [and] chemical imbalance." (Tr. at 56.)

## The Administrative Proceedings

Plaintiff protectively filed an application for SSI on August 10, 2004, due to "right knee, arthirites [sic] in back and leg, 2 heart aches [sic] [and] chemical imbalance." (*Id.*) Her claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on July 18, 2007 and a decision denying benefits was issued on January 22, 2008. Plaintiff filed a request for review, and on April 17, 2008, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff has not engaged in substantial gainful activity since she filed her SSI application on August 10, 2004.

2-3. Plaintiff's low back pain due to degenerative disc disease, status post myocardial infarction, intelligence in the mentally retarded range, and depression with anxiety are severe impairments, but they do not meet or medically equal any of the listed impairments in Appendix 1 to Subpart P of Social Security Regulation No. 4.

4.  Plaintiff cannot return to her past relevant work.[1]

5-7.  Plaintiff was born on December 27, 1961 and was 43 years old on her application date. She has a limited education and can communicate in English. Transferability of job skills is not an issue.

8-9.  Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Therefore, Plaintiff has not been under a disability as defined by the Social Security Act since August 10, 2004.

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a

---

[1] The ALJ found in the body of the decision that Plaintiff has the residual functional capacity to perform light work involving simple, routine, repetitive tasks with limited production demands and limited social interaction - dealing for the most part with things instead of people.

conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 416.920 (2009). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering her age, education and work experience. *Id.*

In this case, the ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity since August 10, 2004, the date her application was filed. The ALJ continued his evaluation at step two, finding that Plaintiff suffers from severe impairments including low back pain due to degenerative disc disease, status post myocardial infarction, intelligence in the mentally retarded range and depression with

-4-

anxiety, but she does not have an impairment, or combination of impairments, that meets or equals the ones listed in Appendix 1, Subpart P, Regulations Number 4.

The ALJ concluded his evaluation at steps four and five, finding that Plaintiff has the residual functional capacity to perform light work involving simple, routine, repetitive tasks with limited production demands and limited social interaction - dealing for the most part with things instead of people. However, the ALJ found that Plaintiff is not able to return to her past relevant work. The ALJ concluded that considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

In this action for judicial review, Plaintiff's sole argument is that the ALJ erred at step three of the sequential evaluation in finding that Plaintiff's severe impairment of "intelligence in the mentally retarded range" does not meet or equal Listing 12.05C in Appendix 1, Subpart P, Regulations Number 4. (Docket No. 10, Pl.'s Br. Supp. Mot. for Summ. J, at 3.) The Court disagrees and finds that based on evidentiary record, there is substantial evidence to support the ALJ's finding.

Listing 12.05C specifies criteria for determining whether a claimant is disabled by mental retardation and is based on a combination of an IQ score with an additional and significant mental or physical impairment. 20 C.F.R. pt. 404, Subpt. P, App. 1, §12.05 (2009). It requires that Plaintiff show a valid verbal, performance, or full scale IQ of 60 through 70 as well as a physical or other mental impairment that imposes an additional and

-5-

significant work-related limitation. *Id.* The introductory paragraph of Listing 12.05 further requires a showing of significantly sub-average intellectual functioning with deficits in adaptive functioning that were initially manifested during the developmental period (before age 22). *Id.* It is Plaintiff's burden at step three to produce evidence that she meets or equals a listing. *See* 20 C.F.R. § 416.912 (2009).

On October 9, 2007, Plaintiff underwent intelligence testing in connection with her claim. (*See* Tr. at 326-30.) The examiner, Dr. Joseph P. Appollo, Ph.D., reported that Plaintiff has a verbal IQ of 66, a performance IQ of 67 and a full scale IQ of 63. (*Id.* at 327.) Dr. Appollo concluded that Plaintiff is presently functioning in the mild level of mental retardation, which "is consistent with [Plaintiff's] reported history of special education classes." (*Id.* at 328.) He further opined that Plaintiff has marked problems in understanding, retaining and following instructions based on her cognitive abilities. (*Id.*)

The ALJ considered Dr. Appollo's findings but gave them very limited weight. (*Id.* at 23.) The ALJ found that Dr. Appollo's opinion concerning the restrictions caused by Plaintiff's "purported low IQ" is inconsistent with Plaintiff's actual adaptive functioning and with treatment notes from Plaintiff's psychiatrist. (*Id.*) The ALJ also noted that although Plaintiff's IQ scores fell within the required range, there was no express statement by Dr. Appollo that the scores are valid and that Plaintiff gave her best efforts. (*Id.* at 19.) Based on the record evidence, the Court finds that there is substantial evidence supporting the ALJ's conclusion that Dr. Appollo's findings and opinions are not entitled to great weight.

As noted by the ALJ, Dr. Appollo failed to make an express finding that Plaintiff's IQ scores are valid and that she demonstrated her best effort. The regulations provide that results of IQ tests are only part of the overall assessment to determine the presence of mental retardation. The narrative report that accompanies the test result should comment on whether the IQ scores are considered "valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). Thus, the ALJ was entitled to consider the lack of an express statement in Dr. Appollo's report that he considered Plaintiff's IQ scores to be valid and an expression of her best efforts. Indeed, the opinion Dr. Appollo offered regarding the validity of the IQ scores is that they are consistent with Plaintiff's reported history of special education classes. (Tr. at 328.) Plaintiff's school records, however, do not reflect that she ever attended special education classes. (*See id.* at 98-100.)

The ALJ also discounted Dr. Appollo's opinion because it is inconsistent with treatment notes of Plaintiff's treating psychiatrist. (*Id.* at 23.) There is substantial evidence in the record to support this finding. Plaintiff received mental health treatment for several years from Davidson County Mental Health, Mental Retardation and Substance Abuse Center. (*See id.* at 176-265.) She received substance abuse counseling and therapy and was seen periodically by various psychiatrists for medication checks. Nothing in the treatment notes indicates that any mental health provider diagnosed mental retardation or questioned Plaintiff's intellectual functioning. Indeed, on several occasions, Plaintiff's treating

-7-

psychiatrists assessed Plaintiff as having average or low average intellectual functioning (*id.* at 210, 215, 256) and being cognitively intact. (*Id.* at 198-99, 208, 220.) Plaintiff's treating psychiatrists "are likely . . . most able to provide a detailed, longitudinal picture" of her mental impairments. 20 C.F.R. § 416.927(d)(2). The psychiatrists' observations that Plaintiff's intellectual functioning is in the normal or low average range is substantial evidence in support of the ALJ's decision to discount Dr. Appollo's opinion and to find that Plaintiff failed to establish that she meets or equals Listing 12.05C.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 9) be denied, that the Commissioner's motion for judgment on the pleadings (Docket No. 11) be granted, and that judgment be entered in favor of the Commissioner.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: December 10, 2009